Richard A. JOHNSON, Appellant,

v.

UNITED STATES of America,
Appellee.

Brent L. SELLICK, Appellant,

v.

UNITED STATES of America,
Appellee.

Nos. 20722, 20723.

United States Court of Appeals
Ninth Circuit.

May 23, 1967.

Rehearing Denied July 7, 1967.

Guy C. Evans, Evans & O'Neill, San Diego, Cal., for appellant Richard A. Johnson.

Brent L. Sellick, in pro. per.

John W. Douglas, Asst. Atty. Gen., David L. Rose, Martin Jacobs, Attys., Admiralty, Dept. of Justice, Washington, D. C., John Meadows, Atty., Admiralty & Shipping Sect., Dept. of Justice, San Francisco, Cal., Edwin L. Miller, U. S. Atty., San Diego, Cal., for appellee.

Before MADDEN, Judge of the Court of Claims, and MERRILL and BROWNING, Circuit Judges.

BROWNING Circuit Judge:

Appellants filed a consolidated libel against the United States under the Public Vessels Act, 46 U.S.C. § 781 et seq. (1964), for damages resulting from the sinking of the fishing vessel Sea Hunt by the destroyer U.S.S. Somers.

Brent L. Sellick claims the balance due him as vendor under a contract for the sale of the Sea Hunt; Richard A. Johnson, a seaman aboard the vessel when it sank, seeks to recover damages for loss of personal effects and injury to his person. The district court found no negligence in the operation of the Somers, and denied recovery. We affirm.

About 9:30 p. m. on March 18, 1962, the Sea Hunt came upon the Bill Kettner foundering off San Clemente Island and took her in tow. A fourteen-knot wind was blowing, and the sea was rough. The Bill Kettner was much the

larger vessel, and the Sea Hunt could make little headway. Dale Bliss, commanding the Sea Hunt, ordered Johnson to send a flashing light S.O.S. The Somers, which was about three and a half miles away, sighted the S.O.S. and immediately altered course and proceeded toward its source. The Somers acknowledged receipt of the S.O.S. but the distress signals continued.

The commander of the Somers, Captain Wayne D. Surface, concluded that the continuing S.O.S. indicated the presence of a person or persons in desperate need of assistance. He determined to proceed to the scene as rapidly as possible, position the Somers dead in the water alongside and windward of the source of the signals, and prepare to effect an immediate rescue of persons who might be in the water or on a sinking craft. The Somers' course was set accordingly, her speed increased to twenty knots, and a "man overboard" detail stationed at her bow equipped with "wet suits," life rings, lines, and grappling hooks.

The Somers reached the immediate area of the Sea Hunt on its intended course. While the bow of the Somers momentarily concealed the Sea Hunt from observers on the Somers' bridge, the two vessels collided and the Sea Hunt sank.

The government offered expert testimony that S.O.S. signals at sea are an urgent call for aid and may mean that human life is in imminent peril; that the maneuver order by Captain Surface is commonly employed in rescuing persons from the water; and that it was executed in a seamanlike manner.

■ We are satisfied that this testimony, and the record as a whole, supports the trial court's finding that the Somers was free from negligence.

Appellants point out that while the Somers was still some distance from the Sea Hunt and the Bill Kettner, her radar indicated that two small vessels were dead in the water in the distress area, and they argue that it was negligence for Captain Surface to continue his high

speed approach in the face of these facts. Captain Surface testified that the radar information and continuing S.O.S. signals indicated to him that a collision had occurred and one or both of the vessels were sinking, confirming the need for speed. We cannot say that Captain Surface's reasoning and consequent conduct were negligent as a matter of law.

■■ The fact of the collision does not demonstrate fault. To maneuver a ship the size of the Somers to the site of distress at high speed and stop dead in the water close enough to the source of the signals to permit the crew to rescue survivors from the sea and bring them directly aboard the destroyer, involved inevitable risk to any small craft that might be in the immediate area. But the primary consideration was not the security of property, but the saving of lives reasonably thought to be threatened. The district court could properly conclude that, in the circumstances, danger of damage to property was a risk which a reasonable man would have run.

The decision in Texas Co. v. City of New York, 290 F. 382 (2d Cir. 1923), relied upon by the district court, is applicable to the present case. There, a fireboat attempting to reach the site of a fire in response to an alarm struck a vessel moored to a pier. In affirming a judgment exonerating the fireboat, the court stated (at 384):

> It may happen, therefore, that contact with another craft which would not be excusable under ordinary circumstances may be excusable in the case of a fireboat, in the light of the maneuver, its execution, and the speed required because of the fire danger. * * * The test must be found in the facts and circumstances of the particular case under consideration. In the case at bar, the maneuver was right, and if, for the purpose of argument, it be assumed that the impact was somewhat more severe than the testimony discloses, nevertheless we think that, in view among other things, of the necessity of haste cast upon the

pilot in his duty of bringing the fireboat speedily to its destination, there was no negligence.

As the district court said: "If rescue operations had not been contemplated the maneuvers of the Somers would probably have been negligent. Where, however, as here, there was a genuine belief that life was in danger, it certainly cannot be said that there was any negligence in the operation of the vessel."

The judgment is affirmed.